**ORIGINAL**

⑤
3-2-01
sc

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIVIENNE BRAMMER,<br>    Petitioner<br><br>    v.<br><br>JOHN ASHCROFT, United States Attorney General; and CHARLES ZEMSKI, Acting District Director, Immigration and Naturalization Service, Philadelphia District,<br>    Respondents | :  No. 1:CV-01-0231<br>:<br>:  (Judge Kane)<br>:<br>:<br>:<br>:<br>:<br>: |

FILED
HARRISBURG

MAR 0 1 2001

MARY E. D'ANDREA, CLERK
Per [signature]
          DEPUTY CLERK

### RESPONSE TO HABEAS CORPUS PETITION

#### Introduction

This is a habeas corpus petition brought by Vivienne Brammer, a native and citizen of Jamaica. In March 2000, an Immigration Judge ordered Brammer's removal from the United States and on November 13, 2000, the Board of Immigration Appeals ("BIA") upheld the removal order. The order of removal rests upon the immigration courts' conclusion that two different theft by deception convictions Brammer received in April 1999, one for which she received a sentence of 6 to 23 months, constitute an aggravated felony and crimes of moral turpitude and require her deportation.

In her habeas petition, Brammer claims that the immigration courts' decision that her conviction constitutes an "aggravated felony" is incorrect, which allegedly renders the order of removal unconstitutional. Habeas Petition, ¶¶2, 11. In that the Third Circuit Court of Appeals recently held that **it** is the

court that has jurisdiction to hear such a claim, i.e. whether a conviction constitutes an "aggravated felony, see <u>Drakes v. Zimski</u>, ___ F.3d ___, 2001 WL 170872 (3rd Cir. Feb. 20, 2001)(attached), this Court does not have jurisdiction to hear Brammer's habeas petition. Moreover, in that Brammer filed her habeas action beyond the jurisdictional 30-day period for filing a petition for review in the Court of Appeals, this case cannot be transferred but, rather, must be dismissed. Even if the Court could hear the merits of Brammer's claim, however, Brammer's theft conviction, with its 6 to 23 month sentence, constitutes an aggravated felony under the Immigration and Naturalization Act and her habeas petition should be summarily denied.

### Statement of the Case

Brammer is a native and citizen of Jamaica who arrived in the United States as an immigrant on November 18, 1993. Exh. 1 (Notice to Appear). On November 4, 1998, Brammer adjusted her status to a Lawful Permanent Resident. <u>Id</u>.

On April 12, 1999, at Docket No. 4911/98, Brammer was convicted in the Berks County Court of Common Pleas, Commonwealth of Pennsylvania, on one count of theft by deception in violation of 18 Pa.C.S. §3922(a)(1). The criminal conduct occurred on or about December 7, 1994, and involved a check with a value of $496.17. The crime was graded as a misdemeanor in the first degree. Brammer

received a 5-year sentence of probation. Exhs. 2, 3 (Information and Order for Docket No. 4911/98).

On April 12, 1999, at Docket No. 0206/99, Brammer also was convicted in the Berks County Court of Common Pleas on one count of theft by deception in violation of 18 Pa.C.S. §3922(a)(1). The criminal conduct occurred on or about March 21, 1998 through November 17, 1998, and involved currency having a value of $29,363.35. The crime was graded as a felony in the third degree. Brammer received a sentence of 6 to 23 months. Exhs. 4, 5 (Information and Order for at Docket No. 0206/99).

As a result of these convictions, on July 7, 1999, the INS placed Brammer in removal proceedings via a Notice to Appear. The INS charged Brammer as being removable under 8 U.S.C. §1227(a)(2)(A)(iii), for having been convicted of an aggravated felony as defined in 8 U.S.C. §1101(a)(43)(G), and under 8 U.S.C. §1227(a)(2)(A)(ii), for having been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct. Exh. 1 (Notice to Appear).

On March 10, 2000, an immigration judge ordered Brammer deported to Jamaica. Exh. 6 (IJ Order). The immigration judge noted that Brammer admitted that the two crimes did not arise out of a single scheme of criminal conduct. Although Brammer denied receiving a 6 to 23 month sentence for the one theft by deception charge, the immigration judge found that the Berks County court

3

document established that she indeed had received a 6 to 23 month sentence. Exh. 6, at 1-2.

Before the immigration judge, Brammer argued that the theft by deception convictions were not crimes involving moral turpitude and did not constitute an aggravated felony. Exh. 6, at 2. The immigration judge rejected Brammer's argument.

The immigration judge found that Brammer's convictions under 18 Pa.C.S. §3922(a)(1), as interpreted by the Pennsylvania courts, **did** constitute crimes involving moral turpitude because there was an intention by Brammer to create an impression that she knew was false -- with the intent to deprive a person of property based on that impression. Further, the crime involved taking property under false pretenses and met the general definition of theft. Exh. 6, at 2-4.

The immigration judge then concluded that Brammer had been convicted of two crimes involving moral turpitude not arising out of a single scheme of criminal conduct, and further held that the one conviction constituted an aggravated felony, i.e. a theft conviction for which the term of imprisonment was at least one year. As a result, Brammer was not entitled to any form of relief and she had to be deported from the United States to Jamaica. Exh. 6, at 4.

Brammer, still represented by counsel, appealed to the BIA. Brammer argued that the immigration judge erred in:

4

(1) finding that she had been convicted of an aggravated felony as the term is defined in 8 U.S.C. §1101(a)(43)(G); and (2) concluding that the two crimes constituted crimes involving moral turpitude. As to this argument, Brammer claimed that the statute under which she was convicted, 18 Pa.C.S. §3922(a)(1), did not require a specific intent element. Exh. 7, at 1-2 (BIA Order).

Addressing these arguments, the BIA concluded that the taking of property constitutes a "theft offense" whenever there is a criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent. Additionally, the statute under which Brammer had been convicted did have a specific intent element: "'[a] person is guilty of theft if he **intentionally** obtains or withholds property of another by deception.'" Exh. 7, at 2 (quoting 18 Pa. C.S.A. §3922(a)(1))(emphasis added by BIA).

In that the statute **did** have a specific intent element, the BIA concluded that Brammer's convictions for theft by deception were crimes involving moral turpitude. Further, in that Brammer admitted the crimes were unrelated and occurred at different times, the crimes did not arise out of a single scheme of criminal misconduct. As such, Brammer was deportable under 8 U.S.C. §1227(a)(2)(A)(ii). Exh. 7, at 2.

Additionally, the BIA concluded that because Brammer was sentenced to a term of incarceration of "at least one year", she

had been convicted of a "aggravated felony" as defined by 8 U.S.C. §1101(a)(43)(G).[1]  Exh. 7, at 2.

As noted above, the BIA issued its order affirming the order of deportation on November 13, 2000. Brammer did not file a petition for review with the Third Circuit Court of Appeals to challenge the BIA's conclusion that her conviction constituted an "aggravated felony" under the Immigration and Naturalization Act ("INA"). Rather, on February 5, 2001, Brammer made this argument to this Court through a petition for a writ of habeas corpus.

The habeas petition does not challenge the conclusion that Brammer's two theft by deception convictions constitute crimes involving moral turpitude. Rather, Brammer's only claim of error is that her convictions do not constitute an "aggravated felony," that this makes the BIA's decision "not supported by law," and that the issuance of an order of removal thus violates her due process rights. Habeas Petition, ¶11.

---

[1] The term "aggravated felony" in 8 U.S.C. §1101(a)(43)(G) is defined as "a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." See United States v. Graham, 169 F.3d 787, 789-91 (3rd Cir.), cert. denied, 528 U.S. 845 (1999)(noting the missing verb in the definition).

6

**QUESTION PRESENTED**

Should the habeas petition be dismissed because only the Court of Appeals has jurisdiction to hear Brammer's claim that her conviction does not constitute an "aggravated felony" under the INA, with Brammer having missed the jurisdictional time period to seek review before the Third Circuit? Alternatively, does Brammer's claim fail as a matter of law?

**ARGUMENT**

**I.     THE HABEAS PETITION SHOULD BE DISMISSED BECAUSE ONLY THE COURT OF APPEALS HAS JURISDICTION TO HEAR BRAMMER'S CLAIM THAT HER CONVICTION DOES NOT CONSTITUTE AN "AGGRAVATED FELONY" UNDER THE INA, WITH BRAMMER HAVING MISSED THE JURISDICTIONAL TIME PERIOD TO SEEK REVIEW BEFORE THE THIRD CIRCUIT.**

Brammer's habeas petition is readily resolved in that Brammer is before the wrong court, with it now being too late for Brammer to present her claim to the only court that did have jurisdiction to address it.

In Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 482-83 (1999), the Supreme Court held that 8 U.S.C. §1252(b)(9) of the INA is the "unmistakable 'zipper clause'" that channels all judicial review to the courts of appeals, with there being "no jurisdictional review in deportation cases unless [§1252] provides judicial review."  Section 1252(b)(9), combined with §1252(b)(1), (2), specifically consolidates all questions of law, "including the interpretation and application of constitutional ... provisions" arising under any removal action to the courts of appeals via a petition for review filed within 30 days of the final order of removal.  8 U.S.C. §1252(b)(1),(2),(9).

7

The INS notes that under 8 U.S.C. §1252(a)(2)(C), "no court" has jurisdiction to review a final order of removal of an alien who is removable for having been convicted of certain criminal offenses. The Third Circuit, however, has interpreted this statutory provision to hold that although it does not have jurisdiction to hear appeals by aliens convicted of these various criminal offenses, such claims can be raised in the district court under 28 U.S.C. §2241 habeas petitions. See <u>Liang v. Immigration and Naturalization Service</u>, 206 F.3d 308 (3rd Cir. 2000).

There is an exception to this holding, however. In cases where the alien disputes that he has committed an "aggravated felony" under the INA that makes him removable, the Court of Appeals **does** have jurisdiction to decide the issue. In other words, it is the Court of Appeals that has jurisdiction to decide if it has jurisdiction, i.e., whether the petitioner is: (i) an alien; (ii) deportable; (iii) for committing a crime covered under 8 U.S.C. §1227(a)(2)(A)(iii). See <u>Drakes v. Zimski</u>, ___ F.3d ___, 2001 WL 170872, *2 (3rd Cir. Feb. 20, 2001)(the limitation on the Third Circuit's jurisdiction comes into play when two jurisdictional facts exist: whether the petitioner is an alien and whether he is deportable by reason of having been convicted of one of the enumerated offenses); <u>Yang v. INS</u>, 109 F.3d 1185, 1192 (7th Cir.), <u>cert. denied</u>, 522 U.S. 1027 (1997)("When judicial review depends on a particular fact or legal conclusion, then a court may

8

determine whether that condition exists. The doctrine that a court has jurisdiction to determine whether it has jurisdiction rests on this understanding.").

In Drakes, the Third Circuit recognized this well-established principle -- that it retains jurisdiction to determine whether an alien has committed an "aggravated felony" that makes him or her removable. 2001 WL 170872, *2.[2] If the Court of Appeals finds that the criminal offense does not constitute an aggravated felony under the INA, "review [by the appellate court] is not precluded and the removal order will be vacated for failing to allege a deportable offense. If [the alien] is wrong,... §1252(a)(2)(C) prohibits further inquiry." Drakes, 2001 WL 170872, *2.

Thus, to challenge whether her conviction constitutes an "aggravated felony," Brammer had to present her claim to the Third Circuit Court of Appeals within thirty days of the final order of

---

[2] See also Tapia Garcia v. INS, 237 F.3d 1216, 2001 WL 46551, *4 (10th Cir. Jan. 19, 2001); Bell v. Reno, 218 F.3d 86, 89-90 (2nd Cir. 2000); Maghsoudi v. INS, 181 F.3d 8, 13 n.12 (1st Cir. 1999)(the court of appeals has jurisdiction to decide if it has jurisdiction, i.e., whether the petitioner is: (i) an alien; (ii) deportable; (iii) for committing a crime covered under 8 U.S.C. §1227(a)(2)(A)(iii)); Herrera-Soto v. INS, 175 F.3d 1024 (Table), 1999 WL 272422 (8th Cir. 1999)(same); Hall v. INS, 167 F.3d 852, 856 (4th Cir. 1999)("[W]e must consider jurisdictional facts to determine our own jurisdiction"); Coronado-Durazo v. INS, 123 F.3d 1322, 1324 (9th Cir. 1997); Yang v. INS, 109 F.3d 1185, 1192 (7th Cir. 1999). Cf. Lettman v. Reno, 168 F.3d 463, 465 (11th Cir. 1999)(holding that the Court of Appeals has jurisdiction to decide its jurisdiction under the transitional rules of the IIRIRA), rev'd on other grounds, 207 F.3d 1368 (11th Cir. 2000).

9

removal. See Drakes, supra; 8 U.S.C. §1252(b)(1),(2)(the petition for review must be filed in the judicial district in which the immigration judge completed the proceedings, with the petition for review to be filed within thirty days after the date of the final order of removal). Brammer did not do so and it is now too late for her to do so. Accordingly, the habeas petition should be dismissed for lack of jurisdiction.

## II. ALTERNATIVELY, BRAMMER'S CLAIM FAILS AS A MATTER OF LAW.

Even if this court had jurisdiction to hear Brammer's habeas petition, the petition fails as a matter of law. Brammer's argument is that her conviction does not constitute an "aggravated felony," which argument consists of the following statement:

> The [INS'] view appears to be that Petitioner has been convicted of an aggravated felony because her sentence upon conviction for the state offense was six months to 23 months and the analogous federal statute, 18 U.S.C. section 641, permits sentencing up to ten years. Under section 641, a sentence of more than one year may be imposed, but it is not required. Inasmuch as the analogous federal statute does not mandate that a sentence in excess of one year be imposed upon conviction under section 641, that offense is not inherently a felony under federal law and thus, is not inherently an aggravated felony for immigration purposes.

Habeas Petition, ¶11.

This argument completely ignores that 8 U.S.C. §1101(a)(43), controls what is considered an "aggravated felony" for immigration purposes under the INA. Under the relevant section at issue in this case, §1101(a)(43)(G) provides:

10

>The term "aggravated felony" means --
>
>(G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year;
>
>* * *
>
>**The term applies to an offense** described in this paragraph **whether in violation of Federal or State law** and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996.

8 U.S.C. §1101(a)(43)(G).

Brammer's reference to an "analogous federal statute," thus, is inexplicable because that federal statute, 18 U.S.C. §641, is not involved in the least in this case. Rather, as §1101(a)(43)(G) of the INA directs, an "aggravated felony" includes state offenses.

Here, Brammer was convicted of a state offense of theft and she received a sentence of a term of imprisonment of at least one year. As such, Brammer clearly falls within the definition of "aggravated felony" as defined by the INA and there is no need to reference federal criminal statutes. See Drakes, 2001 WL 170872, *5 (Congress was sufficiently clear in enactment of the INA that certain crimes with sentences of at least one year constitute "aggravated felonies"); Graham, 169 F.3d at 789-91 (theft offense is an aggravated felony under §1101(a)(43)(G) of the INA as

11

determined by the actual sentence imposed, not the statutory minimum sentence); <u>United States v. McKenzie</u>, 193 F.3d 740, 742 (3rd Cir. 1999)(a "term of imprisonment" under the INA includes a suspended sentence).[3]

Brammer's arguments on this point are simply frivolous. The BIA correctly held -- and clearly so -- that Brammer's Pennsylvania theft conviction, with its 6 to 23 month sentence, constituted an "aggravated felony" for immigration purposes. Thus, Brammer's assertion that the final order of removal is not supported by the law should be summarily rejected.

---

[3] Section 1101(a)(48)(B) of the INA, 8 U.S.C. §1101(a)(48)(B), specifically provides that "[a]ny reference to term of imprisonment or a sentence with respect to an offense is deemed to include the period of incarceration or confinement ordered by a court of law, regardless of any suspension of the imposition or execution of that imprisonment or sentence or execution of that imprisonment or sentence in whole or in part."

12

## CONCLUSION

For the above-stated reasons, this Court does not have jurisdiction of Brammer's habeas petition and it should be dismissed. Regardless, as a matter of law, Brammer's habeas petition is meritless and should be denied.

Respectfully submitted,

DAVID M. BARASCH
United States Attorney

KATE L. MERSHIMER
Assistant United States Attorney
Suite 220
228 Walnut Street
P.O. Box 11754
Harrisburg, PA   17108-1754
(717) 221-4482

Date:   March 1, 2001

2001 WL 170872																									Page 1
--- F.3d ---
**(Cite as: 2001 WL 170872 (3rd Cir.(N.J.)))**

Only the Westlaw citation is currently available.

United States Court of Appeals, Third Circuit.

Trevor **DRAKES**, Petitioner,
v.
Charles W. ZIMSKI, Acting Director of Immigration and Naturalization Service;
Janet Reno, Attorney General, Respondents.

No. 00-3232.

Submitted Oct. 30, 2000.
Filed: Feb. 20, 2001.

Alien petitioned for review of deportation order of the Board of Immigration Appeals. The Court of Appeals, Barry, Circuit Judge, held that: (1) as a matter of first impression, Court had jurisdiction to determine whether jurisdictional facts were present, and (2) because alien's conviction for forgery under Delaware law and ensuing one-year sentence met definition of "aggravated felony," Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) divested Court of jurisdiction.

Petition dismissed.

[1] Aliens ⇐54.3(1)

24k54.3(1)

Court of Appeals had jurisdiction to determine presence of jurisdictional facts necessary for application of section of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) precluding appellate review of removal order based on alien's commission of specified criminal offenses. Immigration and Nationality Act, § 242(a)(2)(C), as amended, 8 U.S.C.A. § 1252(a)(2)(C).

[2] Aliens ⇐53.2(3)
24k53.2(3)

[2] Aliens ⇐54.3(1)
24k54.3(1)

Second-degree forgery of which alien was convicted under Delaware law was deportable aggravated felony under Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), as required to divest Court of Appeals of jurisdiction to hear alien's petition to review deportation order; while Delaware forgery statute apparently encompassed more conduct than was encompassed by traditional definition of forgery, statute did not encompass acts beyond those subject to prosecution under federal definition. 8 U.S.C.A. § 1101(a)(43)(R), 1227(a)(2)(A)(iii), 1252(a)(2)(C); 11 Del.C. § 861.

[3] Aliens ⇐54.3(1)
24k54.3(1)

Alien's suspended sentence of one year on each of two forgery counts under Delaware law was "term of imprisonment [of] at least one year" under Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), as required to divest Court of Appeals of jurisdiction to hear alien's petition to review deportation order. 8 U.S.C.A. 21 1101(a)(43)(R)
On Petition for Review of Order of the Board of Immigration Appeals, (No. A- 36524680).

Alan H. Smith, York, Pennsylvania, for petitioner.

Kate L. Mershimer, Office of the United States Attorney, Harrisburg, Pennsylvania, for respondents.

BEFORE: SCIRICA, NYGAARD, and BARRY, Circuit Judges.

OPINION OF THE COURT

BARRY, Circuit J.

*1 Trevor Drakes, a native of Guyana, has lived in the United States since 1981 as a lawful, permanent resident. On August 12, 1998, Drakes was stopped by the Delaware State Police for a traffic violation. While the facts of what he did are less than clear, at minimum he provided a false name to the police and later pled guilty to two counts of second-degree forgery under Delaware state law. The Immigration and Naturalization Service ("INS") determined that second- degree forgery was a deportable aggravated felony under 8 U.S .C. § 1101(a)(43)(R) and removal proceedings were initiated. Although the Immigration Judge found that Drakes' crime did not satisfy the statutory definition of "aggravated felony," the Board of Immigration Appeals ("BIA") disagreed and ordered Drakes deported.

Drakes filed a Petition for Review and a Petition to Stay Deportation in the United States District Court. Because of the 8 U.S.C. § 1252(b)(2) jurisdictional bar, [FN1] the District Court transferred the case to

Copr. © West 2001 No Claim to Orig. U.S. Govt. Works

Case 1:01-cv-00231-YK   Document 5   Filed 08/31/2001   Page 15 of 19

this Court. We conclude that because Drakes is an alien convicted of an aggravated felony, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") divests this Court of jurisdiction to consider his petition on the merits. 8 U.S.C. § 1252(a)(2)(C). Accordingly, the petition will be dismissed.

It is by now well understood that under 8 U.S.C. § 1252(a)(2)(C), this Court lacks jurisdiction to consider a final order of removal against an alien convicted of one or more specified criminal offenses. [FN2] Liang v. INS, 206 F.3d 308 (3d Cir.2000) is our latest pronouncement to that effect. This limitation on our jurisdiction comes into play, however, only when two facts (which have, somewhat inappropriately, come to be known as "jurisdictional facts") exist: (1) the petitioner is an alien (2) who is deportable by reason of having been convicted of one of the enumerated offenses.

[1] The initial question before us, then--one we have not before explicitly considered--is whether we have jurisdiction to determine whether these jurisdictional facts are present. Drakes argues, and the government concedes, that we have jurisdiction to determine our jurisdiction under § 1252(a)(2)(C). We agree, thus joining all of our sister circuits which have considered the issue. See, e.g., Tapia Garcia v. INS, 237 F.3d 1216, 2001 WL 46551, *4 (10th Cir. Jan.19, 2001); Mahadeo v. Reno, 226 F.3d 3, 9 (1st Cir.2000): Bell v. Reno, 218 F.3d 86, 89-90 (2d Cir.2000); Lewis v. INS, 194 F.3d 539, 542 (4th Cir.1999); Santos v. Reno, 228 F.3d 591, 597 n. 11 (5th Cir.2000); Diakite v. INS, 179 F.3d 553, 554 (7th Cir.1999) (per curiam); Flores-Miramontes v.. INS, 212 F.3d 1133, 1135 (9th Cir.2000); see also Lettman v. Reno, 168 F.3d 463, 465 (11th Cir.1999) (holding that the Court of Appeals has jurisdiction to decide its jurisdiction under the transitional rules of the IIRIRA), rev'd on other grounds, 207 F.3d 1368 (11th Cir.2000).

*2 Whether the requisite jurisdictional facts exist in a particular case is ordinarily easily determined. As the Fourth Circuit stated:
> [W]here ... a criminal statute on its face fits the INA's deportability classification, all convictions under that statute necessarily render an alien deportable. To go beyond the offense as charged and scrutinize the underlying facts would change our inquiry from a jurisdictional one into a full consideration of the merits. Such an approach would fly in the face of the jurisdiction limiting language of IIRIRA.

Hall v. INS, 167 F.3d 852, 856 (4th Cir.1999). See also Lewis, 194 F.3d at 543.

The rub here is this, and it is two-fold: Drakes does not take issue in any respect with his Delaware conviction; rather, he contends that the forgery of which he was convicted under Delaware law is not the crime of forgery Congress had in mind and intended to encompass when it used the term in 8 U.S.C. § 1101(a)(43)(R). He also contends that his sentence of one year on each of the two counts to which he pled guilty does not meet the statute's requisite threshold of "at least one year." If he is right, review is not precluded and the removal order will be vacated for failing to allege a deportable offense. If he is wrong, as we have already suggested, § 1252(a)(2)(C) prohibits further inquiry.

I.

The Immigration and Naturalization Act ("INA") provides that an alien convicted of an "aggravated felony" at any time after admission is deportable. INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes "an offense relating to ... forgery ... for which the term of imprisonment is at least one year." 8 U.S.C. § 1101(a)(43)(R). Drakes pled guilty to forgery in the second degree under Delaware law, which provides, as relevant here, that a person is guilty of forgery when he or she alters, makes, possesses, or transfers certain written instruments while "intending to defraud, deceive or injure another person." 11 Del.C. § 861. Drakes contends that the Delaware statute goes beyond forgery's traditional "intent to defraud" element by also including the intents to "injure" and "deceive." "Deceive" and "defraud," the terms on which Drakes focuses, are not, of course, synonymous. See United States v. Yermian, 468 U.S. 63, 73, n. 12, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984) ("Deceive is to cause to believe the false or to mislead. Defraud is to deprive of some right, interest or property by deceit."). If Congress intended "forgery" to require an intent to defraud and Drakes meant only to deceive, the Delaware conviction conceivably would not qualify as an aggravated felony.

The government gives this argument the back of its hand, responding with little more than the simple tautology that forgery means forgery, just as "a rose is a rose." Appellee Br. at 18. In the plain language of § 1101(a)(43)(R), the government contends, Congress added forgery to the list of aggravated felonies, and

Drakes was convicted of what Delaware calls "forgery." Pronouncing a flower to be a rose, however, does not necessarily make it one. The language of a federal statute must be construed to have the meaning intended by Congress, not the Delaware legislature. See Taylor v. United States, 495 U.S. 575, 590, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990) ("It seems to us to be implausible that Congress intended the meaning of 'burglary' ... to depend on the definition adopted by the State of conviction."); Dickerson v. New Banner Institute, Inc., 460 U.S. 103, 119-120, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983) (absent plain indication to the contrary, federal laws are not to be construed so that their application is dependent on state law, "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control."); United States v. Turley, 352 U.S. 407, 411, 77 S.Ct. 397, 1 L.Ed.2d 430 (1957) ("[I]n the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law."). To determine whether the second-degree forgery to which Drakes pled guilty comes within the "forgery" Congress intended, therefore, we must examine Delaware state law to see if it encompasses acts beyond those subject to prosecution under the federal definition. See Taylor, 495 U.S. at 600 (concluding that this "formal categorical approach" is appropriate in such circumstances); see also In re Alcantar, 20 I. & N.Dec. 801, 809 (B.I.A.1994) (applying the same approach).

*3 [2] The meaning of "forgery" in federal law is ambiguous. Congress has never specifically defined forgery, although it has used the term in numerous statutes outlawing various acts. In some of these statutes, Congress did not specify the requisite culpable intent. See, e.g., 18 U.S.C. § 485 (prohibiting forgery of coins or bars in denominations greater than five cents). In at least twenty other statutes, however, Congress specified that an intent to defraud is required. In four of those statutes, Congress used the term "forgery" together with the phrase "with intent to defraud," seemingly indicating that the two need not be joined. See, e.g., 18 U.S.C. § 471 (prohibiting forgery of federal obligations "with intent to defraud"); 18 U.S.C. § 478 (prohibiting forgery of foreign obligations "with intent to defraud"); 18 U.S.C. § 482 (prohibiting forgery of foreign bank notes "with intent to defraud"); 18 U.S.C. § 500 (prohibiting forgery of postal service money orders "with intent to defraud"). Thus, in Congress' view, it may well be possible to commit "forgery" without "fraud," or at least fraud in the ordinary sense of misrepresentation for material gain. See United States v. Cowan, 116 F.3d 1360, 1361-63 (10th Cir.1997) (had Congress intended to make the intent to defraud an element of 18 U.S.C. § 505, it would have done so expressly).

Where federal criminal statutes use words of established meaning without further elaboration, courts typically give those terms their common law definition. Moskal v. United States, 498 U.S. 103, 114, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990); Gilbert v. United States, 370 U.S. 650, 655, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962) ("in the absence of anything to the contrary it is fair to assume that Congress used ['forgery'] in the statute in its common-law sense."). If research into the common law yields several competing definitions, however, courts should look to the reading that "best accords with the overall purposes of the statute" even if it is the minority view. Moskal, 498 U.S. at 116-17. Where the traditional definition is out of step with the modern meaning of a term, more "generic, contemporary" definitions--such as those found in state statutes--may apply. See Taylor, 495 U.S. at 596, 598. Furthermore, "Congress' general purpose in enacting a law may prevail over this rule of statutory construction" altogether. Id.

Courts generally define traditional common-law forgery as requiring an intent to defraud. See, e.g., United States v. McGovern, 661 F.2d 27, 29 (3d Cir.1981). Similarly, state forgery statutes frequently cite intent to defraud as the sole requisite intent. See 36 Am.Jur.2d Forgery § 26 (fraudulent intent an element of most state statutes, although some allow intent to injure as well). Significantly for the present case, however, at least six states in addition to Delaware provide in their current forgery statutes for an intent to deceive. See Conn.Gen.Stat. § 53a-138 (1999); N.Y.Penal Law § 170.05 (2000); N.D.Cent.Code § 12.1-24-01 (2000); Ky.Rev.Stat.Ann. § 516.020 (2000); Me.Rev.Stat.Ann. tit. 17-A § 703 (1999); Neb.Rev.Stat. § 28-602 (2000).

*4 With these conflicting definitions in mind, we note that Congress evidenced an intent to define forgery in its broadest sense by stating that "an offense relating to ... forgery" qualifies under § 1101(a)(43)(R) (emphasis added). Unless the words "relating to" have no effect, the enumerated crime-- here, forgery--must not be strictly confined to its

2001 WL 170872                                                                                                Page 4
(Cite as: 2001 WL 170872, *4 (3rd Cir.(N.J.)))

narrowest meaning. See Ruiz-Romero v. Reno, 205 F.3d 837, 840 (5th Cir.2000) (alien who transported illegal aliens within the United States committed an aggravated felony as his crime "related to" alien smuggling; phrase describes a class of crimes and does not constitute a restriction). The Delaware forgery statute, while apparently encompassing more conduct than is encompassed by traditional definition of forgery, is "related to" forgery in a way that several states have made part of their criminal codes. Given the differing formulations of forgery and the evidence of Congress' general purpose, we believe it would be eminently appropriate for the BIA to read into § 1101(a)(43)(R) the broad minority definition of forgery rather than the narrow traditional definition.

The BIA did not, at least explicitly, engage in the exercise in which we have engaged to determine the meaning of forgery for purposes of § 1101(a)(43)(R). Rather, the BIA simply found that (1) the section covers offenses "relating to" forgery, (2) Drakes was convicted of forgery under § 861 of the Delaware Criminal Code, (3) a fortiori, his offense was an offense relating to forgery under the Act. Because we come to the same conclusion, however, it is unnecessary to decide what deference must be paid the BIA's scant analysis and somewhat barebones conclusion in this case.

We do not doubt that the principles of Chevron v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) apply in general to the statutory scheme set out in the INA. INS v. Aguirre-Aguirre, 526 U.S. 415, 424-25, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999). The Aguirre-Aguirre Court relied upon 8 U.S.C. § 1103(a)(1), which states that "the Attorney General shall be charged with the administration and enforcement" of statutes under Chapter 8 and that the "determination and ruling by the Attorney General with respect to all questions of law shall be controlling." 8 U.S.C. § 1103(a)(1). "Based on this allocation of authority, ... the BIA should be accorded Chevron deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." Id. at 425 (citation, quotation omitted).

The Attorney General (through the BIA) ruled that Drakes's forgery conviction qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(R). This Court's jurisdiction depends on whether Drakes did or did not commit an aggravated felony under that section. For the purpose of determining our jurisdiction, we must examine the definition of § 1101 "forgery," a question of law which requires the interpretation of Immigration law. Failing to accord deference to the BIA's interpretation of § 1101, as bereft of explanation as it was, would appear to run counter to the Supreme Court's mandate in Aguirre-Aguirre. [FN3]

*5 On the other hand, we noted in Sandoval v. Reno, 166 F.3d 225 (3d Cir.1999) that Chevron deference is not required where the interpretation of a particular statute does not "implicate[ ] agency expertise in a meaningful way" but presents instead "a pure question of statutory construction for the courts to decide." Sandoval, 166 F.3d at 239-40 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 446, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). Sandoval involved determining the effective date of a particular statute, a specific question having little to do with agency expertise. Even though Sandoval predated Aguirre-Aguirre, its reasoning does not seem the least bit undercut by the conclusion reached in that case.

This case appears to fall somewhere between Aguirre-Aguirre and Sandoval. Certainly, the BIA determined a question of law concerning § 1101(a)(43)(R). Just as certainly, however, not only did the BIA not, at least explicitly, call upon any particular expertise in reaching that determination, but defining under federal law a term such as "forgery" is what federal courts do all the time. Nonetheless, as we have suggested, whether we accord deference to the BIA or reach our own conclusion, the result is the same.

II.

[3] Having lost on his first argument, Drakes, of course, could still prevail were we to agree with him that his sentence was simply not long enough to be a "term of imprisonment [of] at least one year," 8 U.S.C. 21 1101(a)(43)(R), "regardless of any suspension of the imposition or execution of that imprisonment." 8 U.S.C. § 1101(a)(48)(B). Drakes contends, and the IJ but not the BIA found, that his suspended sentence of one year on each count does not fall within the definition of "at least one year." We do not agree. "At least" is commonly held to mean "at the lowest" or "as the minimum." Webster's Third New International Dictionary 1287 (1993). There is no indication that Congress meant anything different when it drafted the statute. [FN4] A sentence of one year lasts a specific amount of time, i.e., one year. Just as there is no denying that a person who has one apple also has "at least" one apple,

2001 WL 170872

**Page 5**

(Cite as: 2001 WL 170872, *5 (3rd Cir.(N.J.)))

someone sentenced to one year also qualifies as being sentenced to "at least" one year. Indeed, we have already concluded that "Congress was sufficiently clear in its intent to include certain crimes with one-year sentences in the definition of 'aggravated felony.'" United States v. Graham, 169 F.3d 787, 788 (3d Cir.1999), cert. denied 528 U.S. 845, 120 S.Ct. 116, 145 L.Ed.2d 99 (rejecting the argument that a one-year sentence does not implicate 8 U.S.C. § 1101(a)(43)(G)).

### III.

Because Drakes' conviction for forgery under Delaware law and the ensuing one-year sentence met the definition of an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(R), we will dismiss Drakes' petition for lack of jurisdiction pursuant to 8 U.S.C. § 1252(a)(2)(C).

> FN1. 8 U.S.C. § 1252(b)(2) provides, as relevant here, that "the petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."

> FN2. 8 U.S.C. § 1252(a)(2)(C) provides in pertinent part:
> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in [8 U.S.C. § ] 1182(a)(2).... The offenses referred to in § 1252 include aggravated felonies; controlled substance convictions; certain firearm, national security, and defense crimes; and multiple convictions for crimes of moral turpitude.

> FN3. Other courts have employed Chevron deference in interpreting statutes that ultimately determined their jurisdiction. See, e.g., Bell v. Reno, 218 F.3d 86, 90 (2d Cir.2000) (analyzing under Chevron standard whether the Immigration Act of 1990 superseded the ADAA date restriction with regard to aggravated felonies); Lettman v. Reno, 207 F.3d 1368, 1370 (11th Cir.2000) (same); Maghsoudi v. INS, 181 F.3d 8, 14 (1st Cir.1999) (according "due deference" to the BIA interpretation of a statute in deciding whether or not a crime involves "moral turpitude" within the terms of 8 U.S.C. § 1227(a)(2)(A)(ii)).

> FN4. Drakes points out that in Song v. INS, 82 F.Supp.2d 1121 (C.D.Cal.2000), the District Court mentioned that aliens are aggravated felons under § 1101(a)(43)(R) if they are sentenced to "more than a year." Id. at 1126. The Song Court referenced the statute only in passing, however, and apparently simply misstated its wording.

END OF DOCUMENT

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

VIVIENNE BRAMMER,
    Petitioner

    v.

JOHN ASHCROFT, United States Attorney
General; and CHARLES ZEMSKI, Acting
District Director, Immigration and
Naturalization Service, Philadelphia
District,
    Respondents

No. 1:CV-01-0231

(Judge Kane)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 1st day of March, 2001, she served a copy of the attached

**RESPONSE TO HABEAS CORPUS PETITION**

by placing said copies in a postpaid envelope addressed to the person hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Harrisburg, Pennsylvania.

ADDRESSEE:

Sandra Greene, Esquire
140 Roosevelt Avenue, Suite 202
York, PA 17404

KATE L. MERSHIMER
Assistant U.S. Attorney